**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTINE SLOWINSKI and DAVID HAYES, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 1:24-cv-00513 |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| BLUETRITON BRANDS, INC. | **JURY DEMANDED** |
| Defendant. | |

Now come the Plaintiffs, Christine Slowinski and David Hayes (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, and for their First Amended Class Action Complaint against the Defendant, BLUETRITON BRANDS, INC., ("Defendant"), Plaintiffs allege and state as follows:

**PRELIMINARY STATEMENT**

1. This is an action for damages and any other available legal or equitable remedies, for violations of Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., common law fraud, and unjust enrichment, resulting from the illegal actions of Defendant, in intentionally labeling its Products as 100% Natural Spring Water, when they contain microplastics. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## JURISDICTION AND VENUE

2. This Court has jurisdiction based on Defendant's removal of the action pursuant to 28 U.S.C. § 1332(d), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest or costs and is a class action in which members of the class are citizens of a State different from the Defendant.

3. This court has personal jurisdiction over Defendant, because Defendant does business within the State of Illinois and in Counties within the Norther District of Illinois.

4. Venue is proper in this Court because Defendant does business *inter alia* in the Northern District of Illinois and a significant portion of the conduct giving rise to Plaintiff's Claims happened here

## PARTIES

5. Plaintiff Christine Slowinski is an individual who was at all relevant times residing in Schaumburg, Illinois.

6. Plaintiff David Hayes is an individual who was at all relevant times residing in Bloomingdale, Illinois.

7. Defendant is a Delaware corporation, whose principal place of business is located in Stamford, Connecticut.

8. At all times relevant hereto, Defendant was engaged in the marketing and sale of bottled water.

## FACTS COMMON TO ALL COUNTS

9. Defendant advertises, markets, sells, and distributes bottled water throughout Illinois and the United States.

10. During the Class Period Defendant sold Ice Mountain bottled water (the "Products") labeled, marketed, and advertised as "100% Natural Spring Water, but which actually contained microplastics.

11. Microplastics are small sized plastic particles that originate from manufacturing and degradation of plastics. Microplastics encompass a variety of different molecules with different structures, shapes, sizes, and polymers.

12. Microplastics are not naturally occurring. Instead, microplastics are typically made from polypropylene, polyethylene, polystyrene, and other synthetic polymers. [1]

13. Microplastics can leach into the water from the bottle or from manufacturing and bottling processes, and consumers are exposed to additives, processing aid, and unreacted monomers.[2]

14. Microplastic contamination in the Products is possible at various manufacturing levels and as a result of usage by reasonable consumers.[3]

15. Toxics effects of microplastics on the physiology and behavior of marine invertebrates have been extensively documented.[4] Similar effects have also been observed in larger marine vertebrates such as fish. Furthermore, recent studies using mouse models have reported

---

[1] Md. Iftakharul Muhib, Md. Khabir Uddin, Md. Mostafizur Rahman, and Guilherme Malafaia, "Occurrence of microplastics in tap and bottled water, and food packaging: A narrative review on current knowledge," *Science of The Total Environment* (2022), http://dx.doi.org/10.1016/j.scitotenv.2022.161274.

[2] *Id*; Winkler, A., Santo, N., Ortenzi,M.A., Bolzoni, E., Bacchetta, R., Tremolada, P., 2019. *Does mechanical stress cause microplastic release from plastic water bottles? Water Res. 166, 115082*

[3] See Md. Iftakharul Muhib, Md. Khabir Uddin, Md. Mostafizur Rahman, and Guilherme Malafaia, "Occurrence of microplastics in tap and bottled water, and food packaging: A narrative review on current knowledge," *Science of The Total Environment* (2022), http://dx.doi.org/10.1016/j.scitotenv.2022.161274.

[4] Damià Barceló, Yolanda Picó, & Ahmed H. Alfarhan, *Microplastics: Detection in human samples, cell line studies, and health impacts*, Environmental Toxicology and Pharmacology (2023), https://doi.org/10.1016/j.etap.2023.104204; Grote, K., Brüstle, F., Vlacil, A.K., 2023. Cellular and systemic effects of micro- and nanoplastics in mammals—whatwe know so far. Materials 16, 3123. https://doi. org/10.3390/ma16083123;

potential effects of Microplastics on mammalian gut microbiota, as well as cellular and metabolic toxicity in the host.[5] However, the pathophysiological consequences of acute and chronic exposure to microplastics in mammalian systems, particularly in humans, are not yet fully understood.[6]

16. After being absorbed, Microplastics have the potential to be transported through the circulatory system and subsequently accumulate in various organs, including the kidney, gut, and liver.[7] Thus, the effects on several blood and the immune system cell lines have been widely reported for several Microplastics. Moreover, Microplasticss exhibit a "Trojan Horse" effect by absorbing and transporting various environmental pollutants.[8]

17. Studies indicate that exposure to microplastics through ingestion can lead to gastrointestinal problems such as irritable bowel syndrome; endocrine disruption such as adverse effects on hormonal balance and reproductive function; and cardiovascular problems such as increase of oxidative stress and impaired regular heart function.[9]

18. Microplastics contamination is a material concern to Plaintiffs and other reasonable consumers.

19. In 2018 Orb Media commissioned a global study on synthetic microplastic contamination in bottled water.[10] The study was performed at the Mason lab at State University of New York at Fredonia, Department of Geology & Environmental Sciences. The study tested 259 individual bottles from 27 different lots across 11 brands purchased from 19 locations in 9

---

[5] Yong, C.Q.Y., Valiyaveettil, S., Tang, B.L., 2020. Toxicity of microplastics and nanoplastics in mammalian systems. Int. J. Environ. Res. Public Health 2020 Vol. 17, 1509. https://doi.org/10.3390/IJERPH17051509.
[6] Damià Barceló, Yolanda Picó, & Ahmed H. Alfarhan, *Microplastics: Detection in human samples, cell line studies, and health impacts*, Environmental Toxicology and Pharmacology (2023), https://doi.org/10.1016/j.etap.2023.104204
[7] Id.
[8] Id.
[9] Ebuka Chizitere Emenike et al., *From Oceans to Dinner Plates: The Impact of Microplastics on Human Health*, Volume 9, issue 10, Heliyon, 2023, https://www.sciencedirect.com/science/article/pii/S240584402307648X
[10] Orb Media, "Plus Plastic," Orb Media (2023), available at https://orbmedia.org/plus-plastic.

countries. Ninety-three percent, ("93%"), of bottled water showed signs of microplastic contamination.

20. Bottled water that is contaminated with microplastics is not "100% Natural" Spring Water, nor is it "100%" water.

21. The Food and Drug Administration has not officially defined the term "natural" and has not promulgated an official rule regarding the use of the term "natural." Additionally, the Food and Drug Administration's informal, non-binding policy only addresses the term "natural" without any reference to terms like "100% natural".

22. The labels "Natural" and "100% Natural" are not the same labels because the label "Natural" only contains the word "Natural" and the label "100% Natural" includes the term "100%" which is not present in the label "Natural".

23. Plaintiffs, and reasonable consumers, understand that "100% Natural" products are completely natural, including each and every substance therein, because the label "100% Natural" includes the term "100%".

24. Reasonable consumers do not expect "100% Natural" products to contain synthetic contaminants because the term "100%" indicates to consumers that all parts of the products, including all contents, will be natural.

25. Defendant's "100% Natural" labeling conveys information beyond the scope of the federally approved "spring water" labeling.

26. At the time Plaintiffs' purchased the Products they observed the "100% Natural" labeling, which led them to believe that they were purchasing water of superior quality to other bottled water brands and tap water, which is typically free or distributed by municipalities for miniscule fractions of the cost of bottled water.

27. Under Illinois law, the sale of misbranded or adulterated food is prohibited. 410 ILCS 620/3.1.

28. Under Illinois Law, a food is misbranded if its labeling is false or misleading in any particular. 410 ILCS 620/11.

5

29. The Products "100% Natural" labeling is literally false as the Products are contaminated with microplastics, which are synthetic.

30. Under Illinois law, a food is adulterated if it consists in whole or in part of a diseased, contaminated, filthy, putrid or decomposed substance, or if it is otherwise unfit for food. 410 ILCS 620/10(3).

31. The Products are contaminated because they contain microplastics.

32. The Products contain filth because they contain microplastics.

33. The Products are otherwise unfit for food because they contain microplastics.

34. Microplastics transport environmental contaminants like heavy metals and harmful bacteria into the intestines of people who consume them.[11]

35. Microplastics are filth based on common parlance as they are dirty and unpleasant substances.[12]

36. Reasonable consumers do not expect products sold for human consumption to contain filth.

37. Reasonable consumers do not expect products sold for human consumption to be contaminated.

38. Reasonable consumers do not expect products sold for human consumption to be unfit for food.

39. Reasonable consumers do not purchase products expecting them to be adulterated.

///

---

[11] L. Hu, Y. Zhao & H. Xu, Trojan Horse in the Intestine: A Review on the Biotoxicity of Microplastics Combined Environmental Contaminants, 439 J. Hazard Mater. 129652 (2022), available at https://doi.org/10.1016/j.jhazmat.2022.129652.
[12] Filth, Oxford Learners Dictionary, https://www.oxfordlearnersdictionaries.com/us/definition/english/filth

40. The following picture includes an example of Defendant's fraudulent labeling:



41. Defendant spends money to label its Products with "100% Natural" labeling. Defendant would not spend money to label the Products as "100% Natural" unless it intended consumers to rely on that labeling when purchasing the Products.

42. Defendant through its marketing department pays employes thousands of dollars to create, design, study, and implement labeling to enticing to consumers, including the labeling "100% Natural" which appears on the Products.

43. Defendant would not spend thousands of dollars on marketing employees if it did not intend to create labeling for its Products that would induce consumers to act on that labeling, in this case that labeling is "100% Natural".

44. Yet, when consumers drink Defendant's Products, they are consuming synthetic plastic particles.

45. On October 26, 2022, Plaintiff Christine Slowinski purchased three cases of Products labeled, marketed, and sold as "100% Natural Spring Water", from a Jewel-Osco located in Schaumburg, Illinois.

46. On November 4, 2023 Plaintiff David Hayes purchased two cases of Product labeled, marketed, and sold as "100% Natural Spring Water" from a Walmart located in Bloomingdale, Illinois.

47. Plaintiffs' Products contained microplastics despite being labeled 100% Natural Spring Water.

48. Persons, like Plaintiffs herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the contents of the Products.

49. By making false and misleading claims about the contents of its Products, Defendant impaired Plaintiffs' abilities to choose the type and quality of products they chose to buy.

50. Therefore, Plaintiffs have been deprived of their legally protected interest to obtain true and accurate information about their consumer products as required by law.

51. Plaintiffs and the Class have been misled into purchasing Products that did not provide them with the benefit of the bargain they paid money for, namely that the Products were 100% Natural Spring Water.

52. Plaintiffs and the Class paid a price premium for premium Products, but instead received non-premium Products.

53. Plaintiffs and the Class have been mislead into purchasing Products that did not provide them with the benefit of the bargain they paid money for, namely that the Products are adulterated when they should not be.

54. Plaintiffs have been damaged because they paid Defendant money for Products that are contaminated, contain filth, and/or unfit for food.

55. Plaintiffs did not expect expected that their Products would be contaminated.

56. Plaintiffs did not expect that their Products would contain filth.

57. Plaintiffs did not expect that their products would be unfit for food.

58. The basic benefit of the bargain Plaintiffs paid money for was that they would receive Products not contaminated, filthy, or unfit for food; but instead would receive premium "100% Natural" water Products of a higher quality than bottled water without "100% Natural" labeling and of higher quality than tap water provided by municipalities in Bloomingdale and Schaumberg at a fraction of the cost of bottled water.

59. For example, tap water in Bloomingdale Illinois is $41.90 for the first 5,000 gallons used each month.[13] Meanwhile, tap water in Schaumberg Illinois is $12.03 per 1,000 gallons.[14]

60. Defendant's Products are approximately $5.99 per 4.25 gallons, or approximately $1,417.77 per 1000 gallons and $7,088.87 per 5,000 gallons.

61. Plaintiffs and the Class purchased Defendant's Products because Defendant's advertising claimed that the Products were 100% Natural Spring Water.

62. Irrespective of Defendant's "100% Natural" labeling, Plaintiffs expected their Products would not be adulterated.

---

[13] Village of Bloomingdale, Current Water and Sewer Rates and Fees, available at https://www.villageofbloomingdale.org/DocumentCenter/View/5929/Current-Water-and-Sewer-Rates-and-Fees.
[14] Village of Schaumburg, Payments and Rates, VILLAGE OF SCHAUMBURG, https://www.villageofschaumburg.com/government/finance/water-billing/payments-and-rates (last visited Aug. 22, 2024).

63. Plaintiffs would not have purchased the Products had they known they were adulterated.

64. Due to Defendant's intentional, deceitful practice of falsely labeling the Products as 100% Natural Spring Water, Plaintiffs could not have known that the Products contained microplastics.

65. Plaintiffs were unaware that the Products contained microplastics when they purchased them.

66. Worse than the lost money, Plaintiffs, the Class, and Sub-Class were deprived of their protected interest to choose the type and quality of products they ingest.

67. Defendant, and not Plaintiffs, the Class, or Sub-Class, knew or should have known that labeling, marketing, and selling the Products as 100% Natural Spring Water was false, deceptive, and misleading, and that Plaintiffs, the Class, and Sub-Class members would not be able to tell the Products they purchased contained microplastics unless Defendant expressly told them.

68. Defendant clearly intended consumers to rely on the "100% Natural" labeling of the Products because the labeling appears on the face of the Products.

69. Defendant knew that the Products contained microplastics but chose to label the Products with 100% Natural Spring Water labeling anyway to induce consumers to purchase the Products.

70. As a result of Defendant's acts and omissions outlined above, Plaintiffs have suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

    a. Lost money;

    b.       Wasting Plaintiffs' time; and

    c.       Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

71. Plaintiffs brings this action on behalf of themselves and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within five years prior to the filing of the Complaint through the date of class certification.

72. Plaintiffs also brings this action on behalf of themselves and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows

> All persons within the State of Illinois who purchased the Products within five years prior to the filing of the Complaint through the date of class certification.

73. The Class and the Sub-Class satisfy all of the requirements of the Illinois Code of Civil Procedure for maintaining a class action, specifically:

    a.       Upon information and belief, the Class and the Sub-Class are so numerous that joinder of all members is impracticable. On information and belief there are hundreds, if not thousands of individuals in the United States and the State of Illinois who purchased the products within the applicable statute of limitations period.

    b.       There are questions of fact and/or law which are common to the Class and the Sub-Class, and which predominate over questions affecting any

individual Class or Sub-Class members. These common questions of fact and law include, but are not limited to:

    i. Whether Defendant disseminated false and misleading information by claiming the Products contained "100% Natural Spring Water";

    ii. Whether the Class and Sub-Class members were informed that the Products contained microplastics;

    iii. Whether the Products contained microplastics;

    iv. Whether Defendant's conduct was unfair and deceptive;

    v. Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

    vii. Whether there should be a tolling of the statute of limitations; and

    viii. Whether the Class and Sub-Class members are entitled to restitution, actual damages, punitive damages, and attorneys' fees and costs.

c. Plaintiffs' claims are typical of the Class and the Sub-Class, which all arise from the same operative set of facts and are based on the same legal theories

d. Plaintiffs have no interests adverse or antagonistic to the interests of the other members of the Class and the Sub-Class.

e. Plaintiffs will fairly and adequately protect the interests of the Class and the Sub-Class and Plaintiffs have retained experienced and competent attorneys to represent the Class and the Sub-Class.

f. This class action is a fair and efficient adjudication of the controversy alleged herein. Plaintiffs anticipate that no unusual difficulties are likely to be encountered in the management of this class action.

    g.    This class action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. This class action will also permit the adjudication of relatively small claims by many Class and Sub-Class members who would not otherwise be able to afford to seek legal redress for the wrongs complained of herein. Absent a class action, Class and Sub-Class members will continue to suffer losses of legally protected rights, as well as monetary damages. If Defendants' conduct is allowed proceed to without remedy, Defendants will continue to benefit financially from such conduct.

    h.    Defendants have acted on grounds generally applicable to the entire Class and Sub-Class, thereby making it appropriate for the Court to order final monetary, injunctive, and declaratory relief with respect to the Class and the Sub-Class as a whole.

74. Defendant, its employees and agents are excluded from the Class and Sub-Class. Plaintiffs do not know the number of members in the Class and Sub-Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

75. The size and definition of the Class and Sub-Class can be identified by Defendant's own records, and the records of retailers of Defendant's Products.

///

///

///

## COUNT I
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND
## DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.*

76. Plaintiffs incorporate all of the allegations and statements made in Paragraphs 1 through 75 above as if fully reiterated herein.

77. Plaintiffs are both a "person" as defined in 815 ILCS 505/1(c), as they are both natural persons.

78. Defendant is a "person" as defined in 815 ILCS 505/1(c), as it is a company and a business entity and/or association.

79. 815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

80. Through its representation that the Products contained 100% Natural Spring Water, Defendant made false promises, misrepresentations, concealments, suppressions, and omissions of material facts, with the intent that Plaintiffs rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts.

81. 815 ILCS 505/10a states:

> (a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...

14

> (c) [T]he Court …may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

82. In taking the actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions, and omissions of material facts set forth above, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2.

83. Defendant failed to comply with the requirements of the ILCFA, including, but not limited to, 815 ILCS 505/2 as to the Class and Sub-Class members with respect to the above-alleged transactions

84. By reason thereof, Plaintiffs are entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 ILCS 505/2, enjoining Defendant from engaging in similar conduct in the future, and awarding actual damages, punitive damages, costs, and attorneys' fees.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment against Defendant as follows:

a. An order certifying the Class and the Sub-Class and appointing Plaintiffs as Representative of the Class and the Sub-Class;

b. An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c. An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d. Judgment against Defendant in an amount to be determined at trial;

15

  e. Judgment against Defendant for Plaintiffs' attorneys' fees, court costs, and other litigation costs; and

  f. Any other relief deemed just and proper by this Court.

**COUNT II**
**COMMON LAW FRAUD**

85. Plaintiffs incorporate all of the allegations and statements made in Paragraphs 1 through 75 above as if fully reiterated herein.

86. Through its false statements that the Products contained "100% Natural Spring Water", Defendant made false statements of material fact.

87. At the time Defendant made its statements to Plaintiffs that the Products contained "100% Natural Spring Water", it knew, or reasonably should have known, that the statements described above were false.

88. At the time Defendant made the statements to Plaintiffs, Defendant intended to induce Plaintiffs to purchase the Products.

89. Plaintiffs relied upon the truth of the statements described above and purchased the Products, only to find that the Products they purchased contained microplastics.

90. As a result of their reasonable reliance upon Defendant's false statements of material fact as set forth above, Plaintiffs and other members of the Class and Sub-Class have suffered concrete and particularized injuries, harm, and damages which include, but are not limited to, the loss of money spent on products that did not provide them with the benefit of the bargain they paid money for, and stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, and similar categories of damages.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment against Defendant as follows:

    a. An order certifying the Class and the Sub-Class and appointing Plaintiffs as Representative of the Class and the Sub-Class;

    b. An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

    c. An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

    d. Judgment against Defendant in an amount to be determined at trial;

    e. Judgment against Defendant for Plaintiffs' attorneys' fees, court costs, and other litigation costs; and

    f. Any other relief deemed just and proper by this Court.

## COUNT III
## UNJUST ENRICHMENT

91. Plaintiffs incorporate all of the allegations and statements made in Paragraphs 1 through 75 above as if fully reiterated herein.

92. Plaintiffs conferred monetary benefits to Defendant by purchasing the Products.

93. Defendant has been unjustly enriched by retaining the revenues derived from Plaintiffs' purchase of the Products based on the false statements that the Products contained "100% Natural Spring Water".

94. Defendant's retention of the revenue it received from Plaintiffs, and the Class and Sub-Class members, is unjust and inequitable because Defendant's false statements caused injuries to Plaintiffs, and the Class and Sub-Class members, as they would not have purchased the

Products, or would not have paid a premium price, if they knew the Products contained microplastics.

95. Defendant's unjust retention of the benefits conferred on it by Plaintiffs, and the Class and Sub-Class members, entitles Plaintiffs, and the Class and Sub-Class members, to restitution of the money they paid to Defendant for the Products.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment against Defendant as follows:

g. An order certifying the Class and the Sub-Class and appointing Plaintiffs as Representative of the Class and the Sub-Class;

h. An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

i. An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

j. Judgment against Defendant in an amount to be determined at trial;

k. Judgment against Defendant for Plaintiffs' attorneys' fees, court costs, and other litigation costs; and

l. Any other relief deemed just and proper by this Court.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiffs prevail on any of their claims in this action.

RESPECFULLY SUBMITTED,

CHRISTINE SLOWINSKI AND DAVID HAYES

_____
Attorney for Plaintiffs
Illinois Attorney No. 6276496
Law Offices of Todd M. Friedman, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: (323) 306-4234
Fax: (866) 633-0228
tfriedman@toddflaw.com

_____
Steve G. Perry
Attorney for Plaintiffs
DuPage No.: 343850
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
707 Skokie Blvd., Suite 600
Northbrook, IL 60062
Phone: (224) 218-0875
Fax: (866) 633-0228
Steven.perry@toddflaw.com

## **CERTIFICATE OF SERVICE**

  I hereby certify that, on August 23, 2024 a copy of the foregoing First Amended Class Action Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Steven G. Perry
Attorney for Plaintiff
